**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN E. SMITH, husband, and as
Trustee of the Smith Family Trust;
MARY LOU SMITH, wife; PRETZER
LAND & CATTLE, an Arizona
corporation,

        *Plaintiffs-Appellants,*

        v.

CENTRAL ARIZONA WATER
CONSERVATION DISTRICT, a
municipal corporation of the State
of Arizona,

        *Defendant-Appellee.*

No. 03-16962

D.C. No.
CV-03-00505-EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued April 14, 2005
Submitted August 3, 2005
San Francisco, California

Filed August 10, 2005

Before: Procter Hug, Jr., David R. Thompson, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Thompson

10321

**COUNSEL**

J. Gordon Cook, Phoenix, Arizona, for the plaintiffs-appellants.

Stuart L. Somach, Sacramento, California, for the defendant-appellee.

**OPINION**

THOMPSON, Senior Circuit Judge:

   John E. Smith, Mary Lou Smith, the Smith Family Trust, and the Pretzer Land and Cattle Company ("the landowners") own land located within the Maricopa-Stanfield Irrigation and Drainage District and the Central Arizona Irrigation and

Drainage District ("the irrigation districts"), respectively. Through a master contract and related subcontracts with the Central Arizona Water Conservation District ("Conservation District") and the United States Department of the Interior, the irrigation districts receive and distribute water reclaimed from the Central Arizona Project ("the project").

In anticipation of a legal settlement, the terms of which would alter the amount of water the irrigation districts receive from the project each year for distribution to landowners and other users within their respective districts, the landowners filed this civil action in Arizona state court against the Conservation District. The landowners sought declaratory relief to prevent modification of the existing contracts, claiming vested water rights pursuant to state and federal law, and pursuant to the terms of the project contracts. The Conservation District removed the action to federal court. The landowners moved the district court to abstain from exercising federal jurisdiction and to instead remand their action back to state court. The district court denied the landowners' motion to abstain and remand. It then dismissed their complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I.**

Congress enacted the Reclamation Act of 1902, ch. 1093, 32 Stat. 388 (1902), to provide federal financing, construction, and operation of water storage and distribution projects throughout the western United States. Pursuant to the 1902 Act, Congress in 1968 enacted the Colorado River Basin Project Act, 43 U.S.C. §§ 1501-1556 (1986 & Supp. 2005) ("Project Act"), to further the development of the water resources of the Colorado River Basin, and to apportion those resources among several states. *Id.* § 1501. The Project Act authorized construction and operation of the Cental Arizona Project to store and to deliver Colorado River water to Ari-

zona and western New Mexico for irrigation and municipal and industrial use.[1] *See id.* § 1521. The Project Act also authorized the Secretary of the Interior to enter into a master contract with a political subdivision of each state to arrange for repayment of project construction and operation costs. *See id.* § 1524.

To this end, the Arizona legislature created the Conservation District. *See* Ariz. Rev. Stat. § 48-3701 *et seq.* (1985). The Conservation District was directed to contract with the Secretary of the Interior to finance the construction and operation of the project. *Id.* § 48-3703. This master contract was executed in 1972, and amended in 1988 ("master contract").

State law additionally authorized the Conservation District to enter into subcontracts with irrigation districts for the delivery of project water. Ariz. Rev. Stat. § 48-3703. The irrigation districts, in turn, would levy property taxes on landowners within the districts to assist in repayment of the project costs pursuant to the terms of the master contract. *Id.* The irrigation district subcontracts were executed in 1983, following the Secretary's apportionment of the rights to purchase project water.[2] Each irrigation district contracted with the Conservation District and with the United States to receive a particular

---

[1]We have previously discussed the history and statutory framework of the Central Arizona Project at length. *Maricopa-Stanfield Irrigation & Drainage Dist. v. United States*, 158 F.3d 428, 430-31 (9th Cir. 1998). We therefore briefly describe the project's water allocation framework only as necessary to decide this appeal.

[2]The specific method selected for allocation of project water was an "allocation-contract" mechanism, whereby the Secretary apportioned the right to purchase project water to three priority pools: Indian tribes, municipal and industrial users, and non-Indian agricultural users. Within these pools, the Secretary allotted water to specific users who could then purchase project water by entering subcontracts with the United States and the Conservation District. *See Maricopa-Stanfield Irrigation & Drainage Dist.*, 158 F.3d at 431 (citing CAP Water Allocations, 48 Fed. Reg. 12,446, 12,446-49 (March 24, 1983).

percentage of the non-Indian agricultural priority project water, and in return, each irrigation district agreed to repay the costs related to construction and operation of the facilities needed to deliver their portion of the project water. The master contract and each of the subcontracts were subsequently validated by Arizona state court judgments as required by the terms of the contracts.

The landowners each entered into memoranda of understanding and water service agreements with their respective irrigation districts. These agreements provide that the relevant irrigation district will deliver project water for irrigation purposes to the landowners, such right to be appurtenant to the land, in exchange for which the landowners agree to pay taxes and water service fees. The agreements also provide that wells and other groundwater rights associated with the land are to be conveyed to the irrigation districts, in accordance with state law. Neither the Conservation District, nor the United States, is a party to the memoranda of understanding or to the water service agreements between the irrigation districts and the landowners.

In November 2001, the landowners filed an action in state court against their respective irrigation districts. *Smith v. Maricopa-Stanfield Irrigation & Drainage Dist.*, No. CV-2001-00924 (filed Nov. 6, 2001 Ariz. Super. Ct.). The landowners alleged that the irrigation districts were in the process of considering a settlement agreement—the Arizona Water Settlement Agreement—that would offer the irrigation districts partial debt relief on their project financing obligations, and, in return, would require the irrigation districts to relinquish all or part of their allocated rights to non-Indian agricultural priority project water. *Id.* The landowners sought a declaratory judgment to preempt the possibility that the irrigation districts would give up these water rights through the proposed settlement. *See id.* The landowners' action was stayed for approximately one year, with the stay lifted in March 2003

following the Conservation District's formal approval of the Arizona Water Settlement Agreement.[3]

Following formal approval of the settlement, the landowners continued to litigate the *Smith v. Maricopa-Stanfield Irrigation & Drainage District* state court action, and in addition they filed this declaratory judgment action in state court against the Conservation District. The landowners alleged possession of vested property rights to reclamation water pursuant to state and federal law, the master contract, and the project subcontracts, and sought a declaration prohibiting the Conservation District from interfering with those rights. The landowners alleged, notwithstanding the Arizona Water Settlement Agreement, that the Conservation District is obligated to continue to deliver project water to the irrigation districts for the benefit of the landowners.

The Conservation District removed the present case to federal court, and then moved to dismiss the landowners' complaint for failure to state a claim, arguing that the landowners could not obtain the requested relief because they are neither parties to, nor third-party beneficiaries of, the relevant contracts. Alternatively, the Conservation District sought dismissal for failure to join the United States as an indispensable party. The landowners opposed the motion to dismiss and moved the district court to abstain and to remand the case to state court, arguing that dismissal pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800

---

[3]The Conservation District approved the Arizona Water Settlement Agreement on December 5, 2002. The settlement is now federal law. Arizona Water Settlements Act, Pub. L. 108-451, 118 Stat. 3478 (2004). The Act essentially modifies the 1983 allocations of reclamation water to provide, inter alia, additional agricultural priority water to specified Arizona Indian tribes. *See id.* § 104(a)(1), 118 Stat. at 3487-88. The terms of the settlement agreement require the irrigation districts to relinquish at least a portion of their existing non-Indian agricultural priority water rights. In exchange, the irrigation districts receive partial debt forgiveness and an extension of their repayment terms. *Id.* § 106(b), 118 Stat. at 3493.

(1976),[4] was warranted in light of the pending related state action, *Smith v. Maricopa-Stanfield Irrigation & Drainage District.*

The district court denied the landowners' motion to abstain and remand. The district court concluded that a stay or dismissal of the federal action was not warranted because the pending state court action was an entirely separate proceeding involving claims distinguishable from those presented in the federal action. The district court then granted the Conservation District's motion to dismiss the landowners' complaint for failure to state a claim, determining that because the landowners were neither parties to nor third-party beneficiaries of the master contract or the project subcontracts, the landowners could not bring suit to enforce those contracts. Because the landowners had failed to state a claim, the district court found it unnecessary to evaluate the Conservation District's contention that the United States is an indispensable party. This appeal followed.

## II.

The landowners appeal the district court's decision to exercise its jurisdiction despite their pending state court action against the irrigation districts, *Smith v. Maricopa-Stanfield Irrigation & Drainage District.* Whether the facts of a particular case conform to the requirements for a *Colorado River* stay or dismissal is a question of law which we review de novo. *United States v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001).

[1] In *Colorado River*, the Supreme Court was concerned

---

[4]"The *Colorado River* doctrine is not technically an abstention doctrine," *Holder v. Holder*, 305 F.3d 854, 867 n.4 (9th Cir. 2002); therefore, a district court's decision declining to exercise federal jurisdiction pursuant to *Colorado River* is more properly referred to as a stay or dismissal, as the case may be.

with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts. *Gilbertson v. Albright*, 381 F.3d 965, 982 n.17 (9th Cir. 2004) (en banc). In such cases, the Court recognized there may be circumstances in which traditional abstention principles do not apply, yet considerations of " 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' " nonetheless justify a decision to stay or dismiss federal proceedings pending resolution of concurrent state court proceedings. *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Such circumstances are, however, exceedingly rare. As we have previously observed, the *Colorado River* doctrine is a "narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.' " *Holder*, 305 F.3d at 867 (quoting *Colorado River*, 424 U.S. at 817).

**[2]** We have consequently held that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). "[E]xact parallelism" between the state and federal proceedings is not required, *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989); however, any substantial doubt is sufficient to preclude a stay:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this*, it would be a serious abuse of discretion to grant the stay or dismissal at all . . . .

*Intel*, 12 F.3d at 913 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271,

277 (1988) (quoting *Moses H. Cone*, 460 U.S. at 28) (district court may enter a *Colorado River* stay "only if it has full confidence that the parallel state proceeding will 'be an adequate vehicle for the complete and prompt resolution of the issues between the parties.' ").

[3] Having reviewed the pleadings in both the state and federal actions, we conclude that the likelihood of the state court proceeding adequately addressing the issues presented in the federal proceeding was, at the time of the district court's decision, unclear at best.[5] Although the landowners in their complaint in the state action referenced the project subcontracts as a basis for their asserted water rights, it was by no means clear from their state action complaint that they sought a determination of their rights under the project subcontracts. Rather, the relief they sought focused on their rights against the irrigation districts under the memoranda of understanding and water service agreements. Moreover, there was little to indicate that the state court proceeding would necessarily entail an examination of the landowners' rights, if any, under the master contract or the project subcontracts. In these circumstances, substantial doubt existed regarding whether the state court action would resolve the claims at issue in this federal proceeding. We therefore agree with the district court that a stay or dismissal pursuant to *Colorado River* was unwarranted.

---

[5]The district court denied the landowners' motion for a *Colorado River* stay on September 12, 2003. Over a year later, the Arizona state court decided the issues the landowners assert in this case. *Smith v. Maricopa-Stanfield Irrigation & Drainage Dist.*, No. CV-2110-00924 (Nov. 16, 2004) (order granting summary judgment). Because "[d]ocuments or facts not presented to the district court are not part of the record on appeal," *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990), we consider the district court's decision not to stay or dismiss this action in light of the then-available facts.

### III.

We review de novo the district court's order under Federal Rule of Civil Procedure 12(b)(6) dismissing the landowners' complaint for failure to state a claim. *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). Whether the district court correctly applied the relevant law in concluding the landowners are not third-party beneficiaries of the relevant contracts is a mixed question of law and fact which we review de novo. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000).

The landowners contend that state law, rather than federal law, controls the interpretation of the master contract and the project subcontracts, and that, under state law, the landowners are third-party beneficiaries of those federal subcontracts. We disagree.

**[4]** Federal law governs the interpretation of contracts entered into pursuant to federal law and to which the government is a party. *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir. 1995). Although we have recognized limited circumstances in which state law may apply to the interpretation of a federal contract, such as when the United States is not a party, or when the direct interests and obligations of the government are not in question, *see, e.g.*, *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 890 (9th Cir. 1992), such circumstances do not exist in the present case. The United States is a party to the master contract and to each of the relevant subcontracts. Moreover, the claims asserted by the landowners implicate the government's obligations and interests: the Arizona Water Settlement Agreement facilitates the United States government's obligations to certain Indian tribes, while protecting the government's interest in ensuring eventual repayment of the project's construction costs.

**[5]** Contracts implementing federally-funded water reclamation projects are by nature necessarily federal, c*f. Nebraska*

*v. Wyoming*, 325 U.S. 589, 615 (1945), and we have therefore "consistently applied federal law to interpret reclamation contracts." *Mohave Valley Irrigation & Drainage Dist. v. Norton*, 244 F.3d 1164, 1165 (9th Cir. 2001) (citing *Klamath*, 204 F.3d at 1210, and *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)). Accordingly, we apply federal law principles of contract interpretation to evaluate the landowners' claims under the project master contract and the relevant subcontracts.

The landowners contend, whether the contracts are interpreted pursuant to state or federal law, the landowners are properly classified as third-party beneficiaries of the contracts who can therefore assert claims against the Conservation District. Having reviewed the text and purpose of the master contract and the relevant subcontracts, we conclude the landowners are not intended third-party beneficiaries.

**[6]** In both *Klamath* and *Orff v. United States*, 358 F.3d 1137 (9th Cir. 2004), *aff'd on other grounds*, 125 S. Ct. 2606 (2005), we determined that nonparties to federal water reclamation contracts were not intended beneficiaries of the contracts, even though the contracts operated to the nonparties' benefit and were entered into with them in mind. *Orff*, 358 F.3d at 1147; *Klamath*, 204 F.3d at 1212; *see also Long v. Salt River Valley Water Users' Ass'n*, 820 F.2d 284, 288-89 (9th Cir. 1987) (holding that a plaintiff landowner and real estate developer lacked standing to sue to enforce the Central Arizona Project Master Contract because the landowner was not a party to the contract).

*Klamath* involved a dispute over water recovered and appropriated through a water reclamation project in the Klamath Basin. 204 F.3d at 1209. The project agreement, authorized pursuant to the Reclamation Act of 1902, specified that the California Oregon Power Company (COPCO) would construct the Link River Dam, and in return would retain the right to operate the dam for a specified period of time. *Id.* The

United States and COPCO were the sole parties to the contract. *Id.* COPCO's successor in interest entered an agreement with the United States Bureau of Reclamation to modify the project contract to satisfy various federal requirements, including compliance with the Endangered Species Act and recognition of tribal water and fishing rights. *Id.* at 1209-10. Irrigators within the Klamath Basin challenged the contract modifications, seeking enforcement of the contract's existing terms. *Id.*

**[7]** We held that the irrigators would not be entitled to enforce the contract unless they could qualify as third-party beneficiaries. *Id.* at 1210. Applying federal law, we described the relevant analysis:

> To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.

*Id.* at 1211 (internal citations and footnotes omitted). We further noted the relative difficulty of demonstrating third-party beneficiary status in the context of government contracts: "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Id.*

We found no language within the contract in *Klamath* sufficient to overcome the "clear intent" hurdle. *See id.* Nor could we confer third-party beneficiary status on the irrigators consistent with the objectives of the contract. We noted that "[a]lthough the Contract operates to the Irrigators' benefit by impounding irrigation water, and was undoubtedly entered into with the Irrigators in mind, to allow them intended third-

party beneficiary status would open the door to . . . a result not intended by the Contract." *Id.* at 1212.

In *Orff*, individual farmers and water users within a water district brought suit against the United States. 358 F.3d at 1141. The farmers sought to prevent the United States from modifying an existing water allocation contract pursuant to which the water district received water from the Central Valley Project, a federal water management project authorized pursuant to the Reclamation Act of 1902. *Id.* The government asserted the farmers' claims were barred by sovereign immunity. *Id.* at 1142. Although Congress had expressly waived the government's sovereign immunity for suits seeking to interpret contractual rights in federal water reclamation contracts where the United States is a necessary party defendant, the waiver was limited to suits involving the rights of a "contracting entity." *Id.* at 1144 (citing 43 U.S.C. § 390uu). Accordingly, we were called upon to decide whether the farmers were third-party beneficiaries of the water allocation subcontract such that they could be considered "contracting entities." *Id.*

Citing *Klamath*, we determined that the contract in *Orff* did not evince the necessary "clear intent" to benefit the farmers. *Id.* at 1145. The contract's language pertaining to the obligation of the water users to pay tolls and assessments as a prerequisite to the receipt of water did not "delineate[ ] a contractual relationship between the farmers and the government." *Id.* at 1146. We found "similarly unavailing" language providing that "anyone having or claiming to have by, through, or under the District the right to the use of any of the [Central Valley Project] water supply" would be entitled to an account adjustment in the event of a water shortage. *Id.* As in *Klamath*, that this language might show the contract was entered into with the farmers "in mind" was not enough to confer third-party beneficiary status. *Id.* at 1147. The govern-

ment had therefore not waived its immunity from suit, and the district court lacked jurisdiction. *Id.* at 1149.[6]

Notwithstanding the fate of the farmers in *Orff* and the irrigators in *Klamath*, the landowners here allege the requisite clear intent to confer third-party beneficiary status is displayed by various provisions of the master contract and of the relevant subcontracts.

**[8]** The landowners point to three provisions of the master contract to support their claim to intended beneficiary status. First, the landowners cite ¶ 8.3 of the master contract which provides that "[t]he obligation of the United States to deliver water under this contract is subject to: The availability of such water for use in Arizona under the provisions of the Colorado River Compact, . . . the Boulder Canyon Project Act, . . . the Colorado River Basin Project Act, . . ." and the Supreme Court's opinion in *Arizona v. California*, 373 U.S. 546 (1963). Amended Master Repayment Contract ¶ 8.3(a). This language does not manifest an intent to benefit the landowner. Rather, it merely specifies that the government's obligation under the master contract to deliver water is subject to specified federal law.

The landowners' reliance on ¶ 8.17 of the master contract is likewise misplaced. Paragraph 8.17 provides "the Contractor [Central Arizona Water Conservation District] agrees that all project facilities will be available for the diversion, transportation, and carriage of water for Indian and non-Indian uses pursuant to arrangements or contracts therefor entered

---

[6]Our holding in *Orff* was not disturbed by the Supreme Court. In its *Orff* opinion, the Court construed 43 U.S.C. § 390uu as insufficient to waive sovereign immunity for suits brought solely against the United States. 125 S. Ct. at 2610. The Court held § 390uu permits joinder of the United States when necessary to permit a complete adjudication of rights under a reclamation contract. *Id.* at 2610-11. The Court expressly declined to decide the question we answered in our opinion in *Orff*, namely, whether § 390uu grants consent to suit by noncontracting entities. *Id.* at 2611 n.3.

into on their behalf with the Secretary." Amended Master Repayment Contract ¶ 8.17. This phrase simply indicates that the Conservation District agrees to abide by the terms of the project subcontracts for the delivery of project water; it does nothing to create vested water rights in the recipients of the project water.

Finally, the landowners argue that ¶ 10.5 of the master contract, which requires Arizona state court validation before the United States may be bound, necessarily incorporates the procedural requirements of state law. They argue that, under state law, one purpose of the validation proceedings was to intentionally and directly benefit affected landowners and to recognize them as the primary parties in interest. We find nothing within the language of the contract to suggest that the Arizona court validation proceedings were required for this purpose. Moreover, even if we assume the validity of the landowners' characterization of the purpose of Arizona court validation proceedings, this type of inferred purpose is irrelevant to the "clear intent" inquiry. *Cf. Orff*, 358 F.3d at 1148 (although a noncontracting party may have a stake in a judgment related to or arising under a particular contract, a court's judgment order does not necessarily render the noncontracting party an intended beneficiary).[7]

**[9]** The landowners also invoke various provisions of the subcontracts to support their claim of third-party beneficiary status, yet we find the language of the subcontracts similarly unavailing. The landowners rely on the subcontracts' explanatory recitals which state a purpose to "furnish[ ] irrigation and municipal and industrial water supplies." Subcontract ¶ 2. This hortatory statement of purpose at best might qualify the

---

[7]We also reject the landowners' contention that Arizona state court validation of the subcontracts served to recognize the end water users as primary parties in interest to those contracts for the same reasons that validation of the master contract failed to confer third-party beneficiary status.

landowners as incidental beneficiaries, a status that does not confer enforceable rights. Indeed, the sheer breadth of the objectives expressed in the subcontracts, including flood control, wildlife conservation, and recreation, undermines the landowners' contention that the particular groups who might be benefitted are intended beneficiaries as opposed to incidental beneficiaries of the subcontracts. We conclude here, as we did in *Klamath*, that to allow third-party beneficiary status to all of the groups potentially benefitted under the subcontracts would produce a result certainly not intended. *See Klamath*, 204 F.3d at 1212.

Nor does the subcontracts' requirement that the United States "use all reasonable diligence to make available to the Subcontractor the quantity of Project Water specified [herein]," Subcontract ¶ 4.1, meet the "clear intent" standard required for intended third-party beneficiary status. This language obligates the United States to the subcontractor, in this case the irrigation districts, and is silent as to any other beneficiary. We assuredly will not infer a contracting party's required intent from complete silence.

The landowners are also unaided by the subcontracts' requirement that "[a]ll uses of Project Water and Return Flow shall be consistent with Arizona water law unless such law is inconsistent with the Congressional directives applicable to the Central Arizona Project." Subcontract ¶ 4.3(a). This provision does not, as the landowners assert, confer vested rights to non-Indian agricultural priority water rights under state law. To the contrary, this language limits the possibility that project water rights might indefeasibly vest in the landowners or any other end users of project water.

## IV.

We conclude that the district court properly declined to stay the proceedings in this case pending the resolution of a related state court action. Substantial doubt existed at the time of the

district court's decision as to whether the state court action would provide complete and prompt resolution of the issues presented in this case.

[10] As to the merits of the landowners' claims, those claims arise out of contracts entered into pursuant to federal water reclamation law, the interpretation of which is governed by federal law. Under federal law principles of contract interpretation, incidental beneficiaries may not assert claims predicated upon a federal contract in the absence of a clear intent to confer an enforceable benefit. That a government contract was written with a particular group in mind is not sufficient to demonstrate the contracting parties' intent to benefit that group. In this case, because neither the master contract nor the relevant subcontracts contain language evincing a clear intent to benefit the landowners, the landowners are not third-party beneficiaries, and their complaint was properly dismissed by the district court pursuant to Federal Rule of Civil Procedure 12(b)(6).

**AFFIRMED.**